**SECURITIES & EXCHANGE COMMISSION, Plaintiff,**

v.

**CAPITAL COUNSELLORS, INC., et al., Defendants.**

No. 71 Civ. 1390.

United States District Court, S. D. New York.

May 22, 1974.

10. *See* n. 9 *supra.*

William D. Moran, Regional Administrator, S.E.C., New York City, for plaintiff; Roger M. Deitz, New York City, of counsel.

Leon Leighton, New York City, for receiver.

Conboy, Hewitt, O'Brien & Boardman, New York City, for defendants; David J. Mountan, Jr., New York City, of counsel.

## OPINION

COOPER, District Judge.

We have before us a motion by defendants' attorneys, Conboy, Hewitt, O'Brien and Boardman, Esqs., for payment of $20,000 in legal fees out of the assets of Capital Counsellors, Inc. and Capital Advisors, Inc. (hereinafter "Counsellors" and "Advisors") which comprise the receivership estate. The motion is opposed by the Receiver as well as the Securities and Exchange Commission (hereafter "SEC") on the ground that the desired relief would impose an unfair burden upon public investors who have already suffered substantial losses as a result of defendants' proven misconduct. After careful consideration of movant's claim and of the nature and purpose of the underlying action, we conclude that such fees are not payable out of the assets of the receivership estate. Accordingly, the motion is denied in all respects.

The fees at issue are for services rendered from March 25, 1971 when the Court first acquired jurisdiction over the administration of the assets of Counsellors and Advisors until and including June 17, 1971, the date of the preliminary injunction. The fees arose out of defendants' efforts to resist the application of the SEC for injunctive relief and appointment of a receiver. Movant represented both corporate defendants, Counsellors and Advisors, as well as the individual defendants, J. Irving and Abraham B. Weiss, who were president and vice-president respectively of the corporate entities. The temporary restraining order was signed on March 25, 1971 which froze the assets of Counsellors and Advisors. Thereafter, by our order of April 2, 1971 the customers of Counsellors and Advisors were indemnified from any further depletion of their assets in defendants' possession. On June 11, 1971, after trial of the action, the Court held that injunctive relief was warranted and appointed a receiver to administer the remaining assets of Counsellors and Advisors. Specifically the Court found that defendants had committed the following fraudulent acts:

(a) Sale of unregistered securities in violation of the Securities Act § 5(a) and (c), 15 U.S.C. § 77e(a) and (c);

(b) Selling securities by means of untrue statements in violation of the Securities Act § 17(a), 15 U.S.C. § 77q(a); and

(c) Employing manipulative or deceptive devices in the sale of securities in violation of the Securities Exchange Act § 10(b), 15 U.S.C. § 78j(b) and Rule 17 CFR 240.10b–5. See SEC v. Capital Counsellors, Inc., 332 F.Supp. 291 (S.D.N.Y.1971). The preliminary injunction was signed June 17, 1971.

We find the issue here raised is resolved by the application of the reasoning in a recent decision, SEC v. Alan F. Hughes, Inc., 481 F.2d 401 (2d Cir.), cert. denied, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973). There the Securities Investor Protection Corporation (hereafter "SIPC") had applied for appointment of a trustee for the liquidation of a registered broker-dealer charged with various violations of the federal securities laws. That application was unsuccessfully opposed by defendant broker-dealer and its president. Defendants' counsel thereafter sought to recover fees for resisting the application from assets of the liquidated estate or alternatively from funds provided by SIPC. The Court denied recovery holding that resisting liquidation was not a "purpose of the liquidation proceedings" within the meaning of the Securities Investor Protection Act of 1970 (hereafter "1970 Act"). 15 U.S.C. § 78fff(a)

and (f)(2). Further, though it could so provide, Congress had not in fact authorized payment of such fees by an estate liquidated pursuant to the 1970 Act. The Court concluded that its decision did not deny defendants due process or equal protection inasmuch as the Constitution does not require the appointment of counsel in civil cases and, as is equally true herein, defendants suffered no deprivation of legal services. Finally, the Court found a compelling analogy to the Bankruptcy Act under which it has long been held that legal services in resisting a bankruptcy petition are not compensable thereunder.

> "Moreover, if the Constitution does not require exemption from a filing fee for an indigent who seeks to take advantage of the bankruptcy laws, see United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); it surely does not require that a brokerage firm resisting an application be entitled to have its attorneys paid out of the estate."

SEC v. Hughes, 481 F.2d at 403.

■ Though the *Hughes* case involved an interpretation of the 1970 Act, its reasoning is equally applicable to the instant proceeding. If legal services rendered in opposition to a bankruptcy proceeding are not compensable out of the bankrupt estate, then clearly the services rendered herein in opposition to the SEC application for injunctive relief and receivership are also not compensable from the assets of Counsellors and Advisors.

Bankruptcy may result from ineptitude or misfortune without any imputation of fraud. Here the receivership was imposed not only because defendants were failing to meet their customer obligations but also because that failure resulted from fraudulent acts perpetrated by defendants in violation of the Securities Act and the Securities Exchange Act. See SEC v. Capital Counsellors, Inc., *supra*.

The purpose of these Acts was to achieve a high standard of business ethics in the securities industry and prevent fraud in the purchase and sale of securities so as to protect the public investor and minimize his losses. SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); Zeller v. Bogue Elec. Mfg. Corp., 476 F.2d 795 (2d Cir. 1973). The intendment of the 1970 Act was similarly to protect customers of broker-dealers who had fallen into financial difficulty and incapable of meeting their customer obligations; imputation of fraud to the broker-dealer is unnecessary. See SEC v. Alan F. Hughes, Inc., 461 F.2d 974 (2d Cir. 1972); Lohf v. Casey, 330 F. Supp. 356 (D.Colo.1971). Clearly, public policy as enunciated in the *Hughes* case, 481 F.2d 401, is unalterable in its position that defendants, found to have committed the fraudulent acts aforementioned, shall not be permitted to impose the burden of defending themselves upon customers and other creditors who have already suffered losses in excess of 4 million dollars. That defendants' attorneys failed to provide for adequate assurance of compensation other than through reliance upon a successful defense of the action is no reason for transferring their loss to the public.

■ The Acts which defendants were found to have violated provide for payment of attorneys fees in certain instances. See Securities Act of 1933 § 11(e), 15 U.S.C. § 77k(e); Securities Exchange Act of 1934 §§ 10(b) and 14(a), 15 U.S.C. §§ 78j(b) and 78n(a). Thus shareholders who have established a violation of the securities laws by their corporation and its officials should be reimbursed by the corporation or its survivor for costs of establishing the violation. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir. 1970); Wolf v. Frank, 477 F.2d 467 (5th Cir. 1973); Feder v. Harrington, 58 F.R.D. 171 (S.D.N.Y.1972). Similarly where defendants have obtained dismissal of a complaint brought under the federal securities laws, they may be entitled to reim-

bursement if it is shown that the claim was devoid of merit. See Klein v. Shields & Co., 470 F.2d 1344 (2d Cir. 1972); Katz v. Amos Treat & Co., 411 F.2d 1046 (2d Cir. 1969).

■ The underlying rationale of these cases, as we interpret them, is that where prosecution or defense of an action under the federal securities laws has been in furtherance of the purpose of those laws—protection of the public investor—then the parties bearing the costs of such prosecution or defense are entitled to reimbursement. See Mills v. Electric Auto-Lite, *supra* at 389–390; Smolowe v. Delendo Corp., 136 F.2d 231 (2d Cir. 1943). Applying that reasoning to the instant proceeding, we find that defendants' opposition to the SEC application in no way furthered the interests of their public investors. Although the professional services rendered were of high order and deserving of the legal fees requested, the cost of the opposition interposed here cannot be paid out of the receivership estate.

So ordered.